ROBERT L. CUTTING, Jr., as Receiver of the BANKERS' AND BROKERS' ASSOCIATION, Plaintiff, v. W. G. DAMEREL, Defendant.

*Corporation—liability of a stockholder who has sold his stock, where it has not been transferred on the company's books—1867, ch. 474, § 2.*

Section 2 of chapter 474 of 1867, incorporating the Bankers' and Brokers' Association, provided that the stockholders thereof should be severally liable for all its debts and liabilities, "to an amount equal to the amount of stock held and owned by them respectively, which liability shall be in addition to their liabilities to pay in full the stock subscribed for or purchased by them." Section 5 of title 3 of chapter 18 of part 1 of the Revised Statutes, to the provisions of which the association was made subject, provided that where the whole capital had not been paid in, "each stockholder shall be bound to pay on each share held by him the sum necessary to complete the amount of such share as fixed by the charter of the company." Neither the charter nor the by-laws of the corporation declared that its shares should be transferred only upon its books, but the certificate of stock, issued by the directors, who were authorized to make by-laws and rules for the management and regulation of its affairs, provided that the shares should "be transferable only on the books of the association."

In this action, brought by a receiver of the association to recover a portion of the amount unpaid upon the shares of stock, against one in whose name certain shares of stock stood on the books of the company, it appeared that the defendant had prior thereto sold and delivered the certificate of stock to another person, who had thereafter drawn the dividends upon the stock, but had not had it transferred to his name on the books of the association.

*Held,* that the liability of the defendant continued until the transfer was made on the books of the company, and that the plaintiff was entitled to recover.

Motion for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict in favor of the defendant, ordered at the Circuit.

*John Clinton Gray,* for the plaintiff. All persons who were registered on the books of the Bankers' and Brokers' Association as

holders of shares of its capital stock, when that association failed
and came into the hands of a receiver, remained the legal owners
of the shares, and were subject to the liability to pay the sum
necessary to complete the amount of such share as fixed by the
charter. (L. 1867, ch. 474, § 2; *Adderly* v. *Storms*, 6 Hill, 624;
*Mann* v. *Currie*, 2 Barb., 294; *Roosevelt* v. *Brown*, 1 Kern.,
148; *Matter of Reciprocity Bank*, 22 N. Y., 9; *Empire
City Bank Case*, 18 N. Y., 200; *Webster* v. *Upton*, 91 U.
S., 65; *Pullman* v. *Upton*, 96 Id., 329; *Stanley* v. *Stanley*,
26 Maine, 191; *Castellan* v. *Hobson*, L. R., 10 Eq., 47; *Gris-
sell* v. *Bristow*, L. R., 3 C. P., 112; *Coles* v. *Bristow*, L. R.,
6 Eq., 149; *Hodgkinson* v. *Kelly*, L. R., 6 Eq., 496; *Hawkins* v.
*Murthy*, L. R., 6 Eq., 505; *Cruse* v. *Payne*, L. R., 6 Eq., 641;
*Tennent* v. *City of Glasgow Bank and Liquidators*, 40 *Law Times*,
*N. S.*, 694.)

*Edward E. Sprague*, for the defendant. In an action to enforce
such a liability, the receiver stands in the place of the corporation,
in no better condition and with no greater rights than the corpora-
tion would have had. (*Savage* v. *Medbury*, 19 N. Y., 32; *Hyde* v.
*Lynde*, 4 Id., 387; *Bell* v. *Shibley*, 33 Barb., 610; *Cutting* v.
*Marlor* 17 Hun., 573.) In this case, the purchaser from defendant,
having taken the stock with blank power of attorney, signed by
defendant, took complete title to the stock. (*Holbrook* v. *New
Jersey Zinc Co.*, 57 N. Y., 616, 624; *Driscoll* v. *W. B. & C. M.
Co.*, 59 Id., 96; *Com. Bank* v. *Kortright*, 22 Wend., 348, 363.)

DANIELS, J.:

The plaintiff, as receiver of the Bankers' and Brokers' Association,
a corporation created by chapter 474 of the Laws of 1867, brought
the present action to recover the sum of $30 on each share of the
corporate stock, standing in the defendants' name on the books of
the corporation. Its capital stock was declared to be $500,000,
divided into shares of $100 each (1 L. 1867, p. 1168, § 2), and by
the certificate of the stock in controversy, it appeared that but
fifty per cent. of the par value had been paid upon the shares.
This was sufficient to make out a case of presumptive liability, at

least, in the plaintiff's favor against the defendant. But for the purpose of relieving him from the effect of these circumstances, it was further shown that he did in fact sell his stock to John Bonner & Co., and afterwards delivered to their agent the certificates of the shares. After the sale of the shares, the dividends upon them were credited on the books of the corporation to John Bonner & Co. But the defendant did not direct the shares to be transferred on the books of the corporation, and when Bonner, who was its president, was asked whether they should be so transferred, he answered no, and no such transfer was made of them, but they continued to stand upon the books in the name of the defendant. The court at the trial held that he was not liable on this state of the facts, and a verdict was directed in his favor. Whether that direction was right is the only point requiring special consideration at this time.

There was nothing in the charter, or in the by-laws of the corporation, declaring that its shares should be transferred only upon its books. In that respect the case differs from many which have employed the attention of the courts, in which the point of the liability of stockholders has been considered. Where such a formal transfer has been in terms rendered necessary, there the liability of the preceding owner has been held to continue until a transfer of his shares has been actually made on the books of the corporation. (*Shellington* v. *Howland,* 67 Barb., 14; affirmed, 53 N. Y., 371.) It has been insisted that these authorities are inapplicable to the present action, for the reason that the charter of the Bankers' and Brokers' Association declared only those who both held and owned the stock, to be the persons who should be held liable. The provision in terms is that:

"The stockholders of the said association shall be severally liable for all debts and liabilities of the said association to an amount equal to the amount of the stock *held* and *owned* by them respectively; which liabilities shall be in addition to their liabilities to pay in full the stock subscribed for or purchased by them." (L. 1867, p. 1168, § 2.)

But so restricted a construction should not be given to this act. If it were, then it would follow that a similar restriction ought to

be placed on the term "held," and that would in all cases relieve persons from liability whose stock had in fact been sold and delivered, though no transfer was made of the certificates upon the corporate books. Literally, such shares after their sale and delivery are no longer held by the vendor, and for that reason it might be said that they are not within the terms of the statutes, by which the personal liability of stockholders have been created. That would be the case as to the large classes of persons holding stock in railroad and manufacturing and other business corporations. (2 R. S., 6 ed., 522, § 11; Id., 504, § 38; Id., 391, § 5.) What this provision of the charter was probably intended to accomplish was to declare, as other laws had done, the liability of that class of persons who, in legal parlance, can be designated as the owners and holders of the shares. That intent was reasonably indicated by its last section, in which it was declared that the association should be subject to all the provisions of title 3, chapter 18, of part 1 of the Revised Statutes, so far as they were applicable to, and not inconsistent with, the purposes of this special act. (L. 1867, p. 1169, § 9.) One of the provisions to which it was in this manner subjected declared that "where the whole capital of a corporation shall not have been paid in, and the capital paid shall be insufficient to satisfy the claims of its creditors, each stockholder shall be bound to pay on each share held by him the sum necessary to complete the amount of such share as fixed by the charter of the company." (2 R. S., 6 ed., 391, § 5.) That this section was intended to apply to this association is further evident from the concluding member of the second section of the charter; for the preceding personal liability created by it is stated to be in addition to the stockholders' liability to pay in full for the stock subscribed or purchased by them. It does not, it is true, in terms define what the latter liability shall be, but it leaves that to be done by such other enactments as may be found applicable to the case. This general section, including and declaring the liabilities of all business corporations, is an enactment of that nature, and it is specially applicable to the case now before the court. By that the liability for the balance unpaid upon the shares is stated to be against their holder. It is the same in this respect as that contained in the statutes pro-

viding for the formation of railroad, manufacturing and other corporations. The. holder of the stock is the person declared to be liable for the amount unpaid upon it.

These provisions, and the one included in those generally enacted, are framed so nearly in the same words as to warrant the conclusion that they were all animated by the same intention; and as they all apply to the same class of subjects, there is clearly no reason why that should not be the fact. What was designed was to frame the laws in such a manner as to create substantially and generally the same measure of liability; and its purpose should not be defeated, because in this single instance the term " owned " has been added to that more generally used of " held."

The board of trustees was empowered to make such by-laws, rules and regulations as they judged proper for prescribing the mode of admitting members, the transaction of the business of the association, and managing and directing its affairs. (1 L. 1867, 1168, § 6.) And by the terms included in the certificates issued to the shareholders, it was declared that the shares should be " transferable only on the books of the association," and on the surrender of such certificates. This was the contract between the corporation and the individuals who became the holders of its shares. (Angell & Ames on Corporations, 10 ed., 517.) And it imposed the same restriction upon them as the statute did upon the shareholders whose liability was considered in *Shellington* v. *Howland* (*supra*). This was such a regulation as the charter provided might be made; and while it existed it was required to be observed by the persons who should become the owners of stock in this association. Until that was done those persons did own and hold the stock of the corporation, for they could only part with their title legally and effectually in this manner. The defendant's shares were not transferred in that manner, which was the only way in which a transfer could be made, that the association had the right to recognize and accept; and he consequently continued both to hold and own them in the sense in which those terms were designed to be understood as they were used in the second section of the charter, and as the term " held " was employed in the section of the general law already quoted, and made applicable by its charter

to this association. By this restraint, prescribing the only mode in which the stock could be completely transferred, it continued, as to the company and its creditors, to be held and owned by the defendant, in whose name it stood upon the books. He remained the legal owner, and the person to whom creditors were empowered to look for the discharge of so much of their obligations as could not be satisfied by the property of the association, and was legally chargeable against the stockholder. By the terms of the statute each stockholder has been required to pay on each share held by him the amount necessary to complete the amount of his shares, or that proportion of the same as shall be required to satisfy the debts of the company. (2 R. S., 6 ed., 391, § 5.) And to oblige the defendant to do that is the object of the present suit. His stock was not transferred, as the certificate issued to him provided that it must be, to place the title to it in another person. But for all the purposes of an action like the present one he continued to be its owner and holder, and the person liable to respond to the creditors, under the construction which the statutes making use of the same terms as were embodied in his certificate have received, and which for like reasons should control this case. (*Adderly v. Storm*, 6 Hill, 624; *Rosevelt v. Brown*, 1 Kernan, 148; *Mann v. Currie*, 2 Barb., 294; *Worrall v. Judson*, 5 Id., 210; *Richardson v. Abendroth*, 43 Id., 162; *Holyoke Bank v. Burnham*, 11 Cush., 183.)

A prominent object of the law has been to afford the corporate creditors, and the persons representing their interests, a convenient mode of discovering who were the owners and holders of the company's stock that should be made to contribute to the payment of its debts. As it has been administered, they may safely rely upon the title as it appears by the books of the company. If they could not, they would be subjected to investigations and contests of a fruitless nature, which in many cases would prove to be a snare instead of the benefit the law was intended to devise; for devices would be sure to be invented to elude the efforts of creditors to obtain satisfaction of their debts, which in the end would seriously impair the remedy provided for their security. Corporations and their stockholders have been sufficiently provided with peculiar

privileges and advantages, as the laws relating to them have been enacted, and it should be no part of the purpose of the courts to relieve them from restraints which have been found to be so essential in the way of subserving and promoting the rights and remedies of their creditors. As the facts appeared, the defendant was liable for the amount claimed on account of the shares standing in his name on the books of the association. But fifty per cent. had been paid upon them, and the additional thirty demanded did not transcend the liability presented by his contract as well as the terms of the general statute of the State. If he was made the subject of a wrong by the intentional omission of others whose duty to him it was to do it, to transfer the certificate upon the books he must seek his indemnity from the persons to whom the performance of that duty was intrusted, and not from the creditors, or the receiver, who were in no sense parties to or responsible for that wrong. The verdict should be set aside, and a new trial ordered, with costs to abide the event.

Davis, P. J., concurred; Brady, J., dissented.

Verdict set aside; new trial ordered, with costs to abide the event.